IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TONY ESTLE GILLASPY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:22-cv-193-RAH |
| ) | [WO] |
| WELLS FARGO BANK, N.A., ) | |
| *as Trustee for Park Place Securities, Inc.* ) | |
| *Asset-Backed Pass-Through Certificates*, ) | |
| *Series 2005-WCW2, et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Defendants Wells Fargo Bank and Select Portfolio Servicing tried to foreclose on Plaintiff Tony Gillaspy's home. Gillaspy alleges the attempted foreclosure and the Defendants' assertions of his loan default were wrongful because he made his loan payments. Gillaspy brings thirteen claims, and the Defendants bring four counterclaims. The Defendants have moved for summary judgment on all of them. The smoke now cleared, the Court will deny summary judgment on two of Plaintiff's thirteen claims and all four of Defendants' counterclaims and dispose of the remaining eleven claims as follows.

**II. JURISDICTION AND VENUE**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

1

## III. STANDARD OF REVIEW

Summary judgment is proper if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also* Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and should rely on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324. Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, "[t]he evidence of the nonmovant [must] be believed and all justifiable inferences must be drawn in [his] favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

## IV. BACKGROUND

On May 10, 2005, Gillaspy obtained a loan from Argent Mortgage Company LLC by executing an Adjustable Rate Note (Note), which was secured by a mortgage (Mortgage) on real property located on Avon Road in Montgomery, Alabama. (Doc. 40-1 at 3; Doc. 40-2; Doc. 40-3.)[1] Under the Note, Gillaspy was required to make

---

[1] For clarity, documents in the record will be referred to by their CM/ECF filing and page numbers.

2

monthly principal and interest payments for 30 years. (Doc. 40-2.) The Note was subsequently endorsed in blank and sold to Wells Fargo Bank N.A., as trustee for the Park Place Securities, Inc. Asset-Backed Pass-Through Series 2005-WCW2 (WFB) over 10 years ago. (Doc. 40-1 at 3; Doc. 40-4.)

Select Portfolio Servicing (SPS) began servicing Gillaspy's loan for WFB in September 2012. (Doc. 40-1 at 3.) Gillaspy acknowledges that SPS's role is that of servicer, not mortgagee.

Gillaspy claims that he has met his obligations under the Note and Mortgage. (Doc. 41-7 at 8.) The Defendants claim that Gillaspy defaulted on his loan sometime in late 2019 or early 2020, but the Defendants do not identify when exactly or by how much he initially defaulted or why (*e.g.*, bounced check, nonpayment, short payment, etc.). (Doc. 41-1 at 39–40; Doc. 40-1 at 3.) This alleged default came after Gillaspy's mother, who had been making the payments for him, passed away in November 2019. (Doc. 41-6 at 4–5, 11–12; Doc. 41-7 at 7; Doc. 66 at 4.) In 2020, and after his mother's death, Gillaspy's sister, Colleen Vickery, began helping him with his finances, including his loan payments.

SPS mailed Gillaspy a notice of default on May 20, 2020, but Gillaspy generally disputes that fact. (Doc. 40-1 at 4; Doc. 41-3 at 2.) SPS avers that Gillaspy did not cure the default.

The record reveals that Gillaspy's sister sent several checks to the Defendants (*see, e.g.,* doc. 41-6 at 14; doc. 64 at 6) which were either not cashed or applied; and some were returned. The parties have not provided information about which checks were sent, which checks were received and not applied, which checks were returned, and the reasons for the same. But the record does reveal that checks were received and not applied to Gillaspy's loan. (Doc. 41-6 at 14–15.)

SPS published its notice of intent to foreclose on Gillaspy's home in the Montgomery Independent (a newspaper) on January 27, 2022, February 3, 2022, and

February 10, 2022. (Doc. 40-1 at 4; Doc. 41-4 at 2.) SPS scheduled the foreclosure for March 23, 2022. (Doc. 40-1 at 4.) Gillaspy filed suit before the foreclosure occurred, resulting in the cancellation of the foreclosure sale. (Doc. 40-1 at 5.)

Gillaspy brings thirteen counts against the Defendants in his operative complaint (*see* doc. 22): (1) unjust enrichment against WFB; (2) unjust enrichment against SPS; (3) breach of contract against WFB; (4) breach of contract against SPS; (5) false light against WFB; (6) false light against SPS; (7) defamation, libel, and slander against WFB; (8) defamation, libel, and slander against SPS; (9) violations of the Truth in Lending Act (TILA) against SPS; (10) violations of the Real Estate Settlement Procedures Act (RESPA) against SPS; (11) violations of the Fair Credit Reporting Act against SPS; (12) violations of the Fair Debt Collection Practices Act against SPS; and (13) a claim for declaratory relief.

WFB and SPS have jointly asserted counterclaims for declaratory judgment, breach of contract, judicial foreclosure, and money had and received. (Doc. 27.)

On August 18, 2023, the Court held oral argument on the pending motions.[2] At the hearing, Gillaspy's counsel withdrew and conceded to dismissal of the defamation/libel/slander, false light, and FCRA claims (Counts Five, Six, Seven, Eight, and Eleven, respectively). Thus, the claims for unjust enrichment (Counts One and Two), breach of contract (Counts Three and Four), TILA violations (Count Nine), RESPA violations (Count Ten), FDCPA violations (Count Twelve), and for declaratory relief (Count Thirteen) will proceed for further discussion.

## V. DISCUSSION

### A. The Unjust Enrichment Claims

In Counts One and Two, Gillaspy alleges the Defendants have charged him "fees and expenses which were not permitted" and were "illegal, wrong in character,

---

[2] The Court delayed ruling on the dispositive motions to afford the parties time to attempt to resolve the case. They were unsuccessful.

4

wrong in amount, unauthorized, or otherwise improper under the mortgage contract." (Doc. 22 at 8–9.) The Defendants argue that Gillaspy's unjust enrichment claims are nothing more than repackaged breach of contract claims and should be dismissed since the assessment of fees and expenses is governed by the terms of the Note and Mortgage. They also argue that no unjust enrichment claims exist here because Gillaspy was contractually obligated to pay for the expenses and costs when they were due, especially since he defaulted on the loan.

First, as a threshold issue, Gillaspy did not satisfactorily respond to any of Defendants' arguments related to Counts One and Two. He provides virtually no legal argument, does not address the Defendants' grounds for summary judgment, and vaguely alleges that he has presented substantial evidence to support the claims. And he does not point to what that substantial evidence may be and where it is located in the record. Generally, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (citation omitted); *see also Rice v. JPMorgan Chase Bank, N.A.*, No. 7:14-cv-00318-LSC, 2014 WL 3889472, at *11 (N.D. Ala. Aug. 5, 2014) ("Rice does not mention the unjust enrichment claim in his brief opposing the motion to dismiss, and thus he has abandoned it."). Gillaspy has therefore abandoned Counts One and Two.

Abandonment aside, the Defendants have nevertheless shown their entitlement to summary judgment for substantive reasons. "The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1123 (Ala. 2003) (quoting *Battles v. Atchison*, 545 So. 2d 814, 815 (Ala. Civ. App. 1989)). "To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a

5

reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Invs., LLC*, 77 So. 3d 139, 145 (Ala. 2011) (citation omitted). The Alabama Supreme Court has also explained that "[r]etention of a benefit is unjust if (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched." *Id*. at 146 (quoting *Jordan v. Mitchell*, 705 So. 2d 453, 458 (Ala. Civ. App. 1997)).

The doctrine of unjust enrichment generally does not apply when there is an express contract between the parties governing the same subject matter. *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996). *See also Jackson v. Bank of New York Mellon*, No. 16-062-CG-M, 2016 WL 4942085, at *5 (S.D. Ala. July 19, 2016) (citing *Kennedy*); *Selman v. CitiMortgage, Inc*., No. 12-0441-WS-B, 2013 WL 838193, at *13 (S.D. Ala. Mar. 5, 2013) ("under Alabama law . . . express written agreements concerning the same subject matter as the implicit contract underlying the . . . unjust enrichment cause of action are fatal to that cause of action, as a matter of law").

Applying these principles, federal courts in Alabama have routinely held that a borrower's unjust enrichment claim against a mortgagee (or its servicer) fails if the claim is based on the servicer's collection of fees and expenses under a promissory note and mortgage. *See, e.g., Jackson,* 2016 WL 4942085, at *5; *Federal Home Loan Mortg. Corp. v. Anchrum*, No. 2:14-cv-02129-AKK, 2015 WL 2452775, at *6 (N.D. Ala. May 22, 2015); *Rice*, 2014 WL 3889472, at *11.

Here, the relationship between Gillaspy and the Defendants, as it relates to Gillaspy's loan, is governed by a contract—i.e., the Note and Mortgage. The Note and Mortgage specify the terms of the parties' agreement, as well as the terms that

6

apply if Gillaspy fails to pay as required, including the assessment of fees and expenses. Because a contract governs the same subject matter as the implicit contract underlying the unjust enrichment causes of action, the doctrine of unjust enrichment is inapplicable.

For these reasons, the Court will grant the Defendants' motion for summary judgment on Gillaspy's unjust enrichment claims (Counts One and Two).

## B. The Breach of Contract Claims

Counts Three and Four advance breach of contract claims against WFB and SPS, respectively. Gillaspy alleges that the Defendants breached certain terms of the Note and Mortgage "regarding the application of payment[s] and the notice requirements of paragraph 22 of the agreement." (Doc. 22 at 9–10, 12.) In particular, he alleges that SPS "never applied payments to his account that it cashed" and has "refused to take any monthly payments," which resulted in the assessment of improper and unauthorized fees from April 2017 to May 2022. (Doc. 22 at 10, 13.) He further alleges that SPS failed to send a proper notice of default as required by paragraph 22 of the Mortgage.[3] (Doc. 22 at 11, 13.)

WFB broadly challenges Gillaspy's assertions and states that "Plaintiff has not produced any evidence to support these allegations."[4] (Doc. 40 at 13.) WFB further states that Gillaspy cannot "establish his own performance" due to his own

---

[3] In his response, Gillaspy argues the Defendants also breached the Mortgage by failing to conduct loss mitigation as required by HUD regulations. Gillaspy, however, alleged no such breach in his Amended Complaint, so the Court will not consider it.

[4] In his response, Gillaspy argues that the Defendants cannot advance a summary judgment argument by merely stating that he cannot present evidence that supports his claim. (Doc. 66 at 3.) Gillaspy is generally correct on this point. The Eleventh Circuit has stated that "it is never enough simply to state that the non-moving party cannot meet its burden at trial. . . . Instead, the moving party must point to specific portions of the record in order to demonstrate that the nonmoving party cannot meet its burden of proof at trial." *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 n.19 (11th Cir. 1991) (citations and internal punctuation omitted).

failure and/or refusal to make payments. (Doc. 40 at 14.) SPS raises a similar argument, but also argues that it cannot breach a contract to which it is not a party.

To prove a claim of breach of contract under Alabama law, Gillaspy must show "(1) a valid contract binding the parties; (2) the [plaintiff's] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Dupree v. Peoples So. Bank*, 308 So. 3d 484, 490 (Ala. 2020) (citing *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)). Here, the relevant contracts are Gillaspy's Note and Mortgage, and SPS is a party to neither. Thus, SPS owes no contractual duty to Gillaspy, even as a servicer or agent to a party to the Note and Mortgage. *Stone v. JPMorgan Chase Bank, N.A.*, 786 F. App'x 212, 216 (11th Cir. 2019) ("Because Chase is not a party to the relevant contracts, Stone has failed to state a claim against Chase for breach of contract."); *Indus. Dev. Bd. of City of Montgomery v. Russell*, 124 So. 3d 127, 138 (Ala. 2013). As such, SPS is entitled to summary judgment on Count Four.

The outcome is somewhat different on the merits of Gillaspy's contract claim against WFB in Count Three. WFB is a party to the Note by virtue of its holder status. But WFB has not shown its entitlement to summary judgment on Gillaspy's payment allegations based upon the parties' current arguments and record. As the Court understands WFB's arguments, it claims it is entitled to summary judgment because Gillaspy has failed to make his payments and has therefore defaulted on the loan because he cannot show that he made all his payments. Alternatively, in WFB's view, any breach by WFB is excused because of Gillaspy's own nonperformance. In other words, WFB rests its argument on what the parties can show about the payments made on the loan.

The problem here is that neither party has explained the payment records or transactional history. For example, WFB—which bears the burden here—states in its brief that "Plaintiff defaulted on his mortgage loan by, among other things, failing

to make payments as agreed," and then cites to a document custodian declaration that similarly states, "Plaintiff defaulted on his mortgage loan by, among other things, failing to make payments as agreed." (Doc. 40-1 at 3.) That document custodian declaration then broadly references and attaches a 168-page transaction history report that contains miniscule lines of hundreds and hundreds of transaction entries. (Doc. 40-1 at 3; Doc. 41-1.) WFB also cites to five pages of deposition testimony from Ms. Vickery in which Ms. Vickery is instructed to simply look at several entries from the transaction report. None of this is helpful in sorting out the pertinent issues relating to Gillaspy's payments and loan status, especially when the parties do not explain what they believe the records show or how the Court should interpret them.[5]

The parties dispute Gillaspy's loan payments. That much is quite clear. To an experienced mortgagee or loan servicer, stacks of transactional records alone may well demonstrate nonpayment or a default. But it is not this Court's job to decipher those records itself with little-to-no assistance from the parties, pinpoint missed or late payments, determine when payments were received and not applied or sent back, determine when the loan went in or out of default, or determine when efforts were made to reinstate a loan and whether the mortgagor did so. That is WFB's job. The Court will not make the parties' arguments for them or sift through voluminous records in search of a question of fact, or the lack of one. *See Henry v. City of Tallahassee*, 216 F. Supp. 2d 1299, 1310 (N.D. Fla. 2002) (citations omitted) ("A fact question either exists or it does not. . . . [D]istrict courts are not obligated to search for a fact question by sifting through the record.").

Gillaspy does no better in identifying and explaining the pertinent fact questions. But he has presented evidence, as broad as it is, that he made payments

---

[5] Presumably, SPS maintained servicing notes that would reflect account communications and account activities such as returned payments. These notes are not contained in the record.

9

by check in 2020 and that some of these checks were not applied to the loan and were instead returned or left uncashed. (*See, e.g.*, Doc. 41-6 at 14; Doc. 64 at 6.) WFB does not explain why or when checks were sent back or what Gillaspy's account status was at the time.

Again, the Court will not spend its time trying to decipher these records. WFB bears the burden of showing a lack of material fact, and it has not met that burden. WFB's summary judgment motion on Count Three is thus due to be denied as it relates to the payments made on the loan.

But not so with regard to Gillaspy's breach of contract claim on the notice of default. Paragraph 22 of the Mortgage requires the lender to give notice of a default to Gillaspy prior to acceleration. Defendants have provided evidence showing they mailed Gillaspy a notice of default on May 20, 2020 to the property address, and they have provided a copy of that notice. (Doc. 40-1 at 4; Doc. 41-3 at 2.) Gillaspy has presented an affidavit from Ms. Vickery, who testified that the Defendants never sent Gillaspy such a notice, but her testimony is conclusory and speculative. (Doc. 64 at 10.) Gillaspy submitted no other evidence to dispute that the notice was sent and delivered to the property. In his affidavit, Gillaspy never addressed the issue and never denied receiving the notice.[6] (Doc. 65.) Thus, the Court concludes there is no question of fact on this issue and WFB is entitled to summary judgment on Count Three as it relates to the notice of default.

## C. The TILA Claim

In Count Nine, Gillaspy alleges that SPS violated TILA, 15 U.S.C. § 1601 *et seq.* and Federal Reserve Board Regulation Z, 12 C.F.R. § 226—a regulation promulgated pursuant to TILA. Specifically, Gillaspy alleges that SPS failed to send

---

[6] The record suggests Gillaspy suffers from a brain injury and that his sister, Ms. Vickery, handles his finances and holds his power of attorney. But there is no evidence Gillaspy is under a conservatorship or that he has been declared incompetent.

monthly billing statements to him from August 2019 to March 2022 in violation of TILA. SPS responds, not by disputing the factual assertion, but by arguing that TILA does not apply to SPS because it is a servicer and not a creditor. SPS also argues the TILA claim is time-barred.

SPS's statute of limitations argument largely lacks merit. Under TILA, including the monthly billing regulations that fall under it, a claim must be brought within one year. Here, Gillaspy filed his suit on April 21, 2022, and he claims that SPS failed to send monthly billing statements from August 2019 to March 2022. As such, Gillaspy's allegations concerning the lack of billing statements are not time-barred, at least with respect to those that should have been sent from April 2021 forward.

Even so, SPS has shown its entitlement to summary judgment because it is a loan servicer. Under TILA, a consumer has a private right of action against "any creditor who fails to comply with any requirement imposed under this part[.]" 15 U.S.C. § 1640(a). But by its plain language, TILA's private right of action applies only to actions against "creditors." *Id.* TILA defines a "creditor" as "the person to whom the debt arising from the consumer credit transaction is initially payable[.]" 15 U.S.C. § 1602(g).

Gillaspy acknowledges that SPS is a loan servicer and not a creditor or an assignee within TILA's purview. Citing to *Kahn v. Bank of New York Mellon*, 849 F. Supp. 2d 1377 (S.D. Fla. 2012), in which a court addressed the issue of vicarious liability with regard to TILA, Gillaspy argues that SPS can be liable as a loan servicer. *Kahn* does not support his position because the court there held that a creditor was liable for its servicer's § 1641(f)(2) violation. *See generally*, 849 F. Supp. 2d 1377. Gillaspy's problem is that he has not asserted a TILA claim against a *creditor* for the actions of a *servicer*. Instead, he has only asserted a TILA claim

11

against a servicer, SPS, and has failed to offer any alternative theory for which a servicer alone can be liable under TILA.

Gillaspy also cites to the Eleventh Circuit's decision in *Lamirand v. Fay Servicing LLC*, 38 F.4th 976 (11th Cir. 2022), in support of his argument that SPS can be sued under TILA for failing to send monthly billing statements. *Lamirand* is not persuasive or helpful here because the Eleventh Circuit did not examine the issue of servicer liability for an alleged TILA violation. *See generally*, 38 F.4th 976. It only addressed whether the billing statement mandates of TILA could give rise to a claim under the FDCPA and Florida's equivalent state statute.

In short, Gillaspy has not shown that he can maintain a cause of action directly against SPS, as a loan servicer, under TILA. *See Jackson*, 2016 WL 4942085, at *12; *Moragan v. Ocwen Loan Servicing LLC*, No. 6:17-cv-2028-Orl-40KRS, 2018 WL 8582447, at *4 (M.D. Fla. Apr. 18, 2018) (dismissing TILA claim concerning alleged failed modification attempt because loan servicers are not liable under TILA); *Perdum v. Wells Fargo Home Mortg.*, No. 1:17-CV-00972-SCJ-JCF, 2017 WL 8186694, at *15–18 (N.D. Ga. Dec. 8, 2017). Accordingly, SPS is entitled to summary judgment on Count Nine.

**D. The RESPA Claim**

In Count Ten, Gillaspy alleges violations of RESPA, 12 U.S.C. §§ 2601-2617, against SPS. Specifically, Gillaspy alleges that SPS violated RESPA by failing to acknowledge or respond to his Qualified Written Requests (QWR) within the time provided by federal law.[7]

"When a loan servicer receives a QWR from a borrower, the loan servicer must first provide to the borrower, within five days, a written response

---

[7] The regulations adopted to implement RESPA describe two types of QWRs: notices of error (NOE) and requests for information (RFI). *See* 12 C.F.R. §§ 1024.31, 1024.35(a), 1024.36(a). To the extent Gillaspy sent a NOE or RFI, such notices and requests will be referred to as a QWR.

12

acknowledging receipt of the QWR. . . . The loan servicer must then, within thirty days of receiving the QWR, send the borrower a written response explaining any corrections to the borrower's loan account, clarifying the reasons that the loan servicer believes the borrower's account is accurate, or providing the information the borrower requested." *Thomas v. US Bank Nat'l Ass'n*, 675 F. App'x 892, 899 (11th Cir. 2017) (per curiam). *See also* 12 U.S.C. § 2605. If the servicer fails to adequately respond to a borrower's QWR in violation of RESPA, the borrower may bring a cause of action against the servicer for "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1)(A). "[D]amages are an essential element in pleading a RESPA claim" and a "causal link" must exist "between the alleged violation and the damages." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016).

Notably, there are restrictions on where a borrower can send a QWR. The Eleventh Circuit has recognized that, under RESPA, "[i]f a servicer designates a particular address for receiving QWRs, Regulation X requires a borrower to mail a QWR to that address to trigger the servicer's duty to respond." *Bivens v. Bank of Am., N.A.*, 868 F.3d 915, 919 (11th Cir. 2017).

Here, Gillaspy alleges that he mailed QWRs to SPS on December 15, 2020, May 10, 2021, September 13, 2021, December 20, 2021, and March 21, 2022. But Gillaspy did not attach the purported QWRs to his Amended Complaint, and he did not produce them in discovery, other than the one he mailed on March 21, 2022, which SPS acknowledges as having been received. Nowhere in the Amended Complaint or in the record does Gillaspy allege or provide evidence of the content of the other QWRs. Instead, he broadly argues that he mailed several QWRs.

SPS has submitted evidence showing that it timely responded to the only QWR that it has any record of receiving; that is, the March 21, 2022, QWR that it

13

responded to the same day. As such, Gillaspy has shown no question of fact as it concerns the March 21, 2022, QWR.

As to the other QWRs, SPS argues that Gillaspy has presented no evidence that they existed or what exactly they said, let alone that they were properly mailed, beyond simply stating that he sent them. Can Gillaspy maintain a RESPA claim at the summary judgment stage based on alleged QWRs that he merely claims to have sent without any other evidence of their existence, contents, mailing or receipt? No. Gillaspy's bare statements alone cannot support a RESPA claim at the summary judgment stage of litigation. He offers up no photocopy of the signed letters or copies of, for example, the word processing version or data files for the letters. He offers no proof of mailing, such as a United States Postal Service receipt, and no proof of receipt by SPS. He points to no evidence from SPS's own records showing receipt of these letters either. And he provides no evidence of what these letters actually said or requested. His vague, conclusory statements regarding the unaccounted-for QWRs are insufficient to create a bona fide issue of material fact on his RESPA claim. *See, e.g.*, *Tonea v. Bank of Am., N.A.*, 6 F. Supp. 3d 1331, 1346 (N.D. Ga. 2014) (addressing plaintiff's unsupported conclusory allegation that he mailed a QWR to the defendant and finding that the plaintiff's failure to "provide any allegations about the content of his mailing" and to "attach copies of the mailing to the complaint" is insufficient "to survive a motion to dismiss"); *Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1233 (N.D. Ala. 2013); *Lucero v. Diversified Invs. Inc.*, No. 09-cv-1742-BTM, 2010 WL 3463607, at *4 (S.D. Cal. Aug. 31, 2010) ("[B]ecause [the plaintiffs] do not allege the contents of the QWR or attach it to their Complaint, it is unclear whether Plaintiffs included enough information for the servicer to identify them, or asked for information covered by 12 U.S.C. § 2605."); *Carrillo v. Bank of New York*, No. 09-61642-CIV, 2009 WL 5708925, at *4 (S.D. Fla. Dec. 22, 2009) (Section 2605 claim failed to state a cause of action because,

among other deficiencies, the complaint "does not indicate the subject matter of the written correspondence"); *Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1232–33 (N.D. Ala. 2013) ("It is not enough to simply use the words 'qualified written request' somewhere in the Complaint. Rather, Plaintiff[] must plead facts demonstrating that a written request was actually made, such as by . . . describing its contents showing they satisfied the requirements enumerated in 12 U.S.C. § 2605(e)(1)(B)."); *Odum v. Specialized Loan Servicing*, No. 1:15-cv-01949-MHC-JKF, 2016 WL 4582070, at *4 (N.D. Ga. July 5, 2016) (finding plaintiff's RESPA claim could not survive a motion to dismiss where he failed to plead specific facts that a written request was actually made); *Saint-Felix v. Bayview Loan Servicing LLC*, No. 1:15-cv-1679-ELR-CMS, 2015 WL 13777024, at *8 (N.D. Ga. Nov. 12, 2015); *Zanaty v. Wells Fargo Bank, N.A.*, No. 2:16-CV-0277-VEH, 2016 WL 6610443, at *9 (N.D. Ala. Nov. 9, 2016) (agreeing with other courts that a plaintiff must "substantiate the validity of a QWR's contents as a part of his complaint"); *Patrick v. CitiFinancial Corp.*, No. 3:15cv296-WHA, 2015 WL 3988860, at *3–4 (M.D. Ala. June 30, 2015) (dismissing RESPA claims where plaintiff failed to allege content of QWR); *Tallent v. BAC Home Loans*, No. 2:12-CV-3719-LSC, 2013 WL 2249107, at *4 (N.D. Ala. May 21, 2013) (requiring a showing that the QWR was in writing, included the name and account of the borrower, and included a statement of the reasons for the belief that the account is in error or provides sufficient detail regarding the information sought); *Malally v. BAC Home Loan Servicing, LLC*, No. 3:10-CV-0074-JTC-JFK, 2010 WL 5140626, at *8 (N.D. Ga. Oct. 8, 2010).[8] *See also Konst v. Fla. E. Coast Ry. Co.*, 71 F. 3d 850, 851 (11th Cir. 1996) (a

---

[8] Most courts have addressed these same deficiencies at the motion to dismiss stage. While the Court deals with it here at the summary judgment stage, these court decisions are no less persuasive.

"'presumption of receipt' arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail.").

Accordingly, SPS is entitled to summary judgment on Count Ten.

### E. The FDCPA Claim

In Count Twelve, Gillaspy alleges violations of the FDCPA, 15 U.S.C. §§ 1692-1692p, by SPS concerning its handling of Gillaspy's loan, including its communications with Gillaspy. SPS argues summary judgment is appropriate because Gillaspy admits his default and because the FDCPA does not apply to its servicing actions.

To prevail on an FDCPA claim, a plaintiff must establish: (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA. *Janke v. Wells Fargo and Co.*, 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011); *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011). The FDCPA applies only to "debt collectors," not to creditors or servicers. *See* 15 U.S.C. § 1692a(6); *Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl, 2012 WL 1176701, at *11 (M.D. Fla. Apr. 9, 2012) (explaining that the "critical element is whether the defendant is a debt collector" as defined under the statute). Additionally, the statute excludes from the definition of "debt collector" any person who acquires a debt before it is in default. *See* 15 U.S.C. § 1692a(6)(F). This exclusion has been interpreted by courts to mean mortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when the loan was not in default. *Alhassid v. Nationwide Mortg. LLC*, 771 F. App'x 965, 968 (11th Cir. 2019); *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012).

SPS states that Gillaspy has admitted his default, and then cites to paragraph 104 of the Amended Complaint as the basis for that admission. A review of paragraph 104 does not confirm that assertion. Instead, in that paragraph, Gillaspy alleges, "At the time SPS began servicing the loan, the loan was either in default, or it was serviced by SPS as a defaulted loan." (Doc. 22 at 24–25, ¶104.) The Amended Complaint is not a concrete assertion of Gillaspy's default, let alone an admission rendering the FDCPA inapplicable to SPS.

Regardless, Gillaspy's FDCPA claim is before the Court via the Defendants' summary judgment motion where the evidence shows that WFB is the note holder or creditor and that SPS is a loan servicer. Gillaspy admits as much. Mortgage loan servicers generally are not debt collectors for purposes of the FDCPA absent proof that the loan was in default at the time of assignment or transfer of the loan or servicing. Gillaspy has failed to provide that proof, assuming that such proof alone could make a loan servicer a debt collector under the FDCPA. And further, Gillaspy has failed to show how SPS's account activities, as the servicer of a loan secured by a mortgage on real property, constitute a violation of the FDCPA. *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460–61 (11th Cir. 2009) (holding that "an enforcer of a security interest, such as a [mortgage company] foreclosing on real property . . . falls outside the ambit of the FDCPA.").

The Court will therefore grant SPS's motion for summary judgment on Count Twelve.

**F. The Declaratory Judgment Claim**

In Count Thirteen, Gillaspy seeks declaratory relief against WFB on the basis that the Defendants breached the Note and Mortgage by failing to follow the paragraph 22 default notice requirements and to properly accept and apply his loan payments.

To the extent this claim is premised upon the same notice and payment issues made the basis of the breach of contract claims, summary judgment is due to be granted in part and denied in part for the same reasons as the breach of contract claims. WFB is therefore entitled to summary judgment on Count Thirteen as it relates to the paragraph 22 notice allegation. Summary judgment is denied on this claim as it relates to Gillaspy's loan payments.

**G. The Defendants' Counterclaims**

In their Answer to Gillaspy's Amended Complaint, WFB and SPS jointly assert counterclaims for declaratory judgment, breach of contract, judicial foreclosure, and money had and received. They move for summary judgment on all four claims, stating the evidence shows that WFB is the owner and holder of the debt and the assignee of the mortgage, and that Gillaspy has failed to make payments as agreed. Therefore, according to Defendants, WFB and SPS have the right to foreclose on Gillaspy's home.

The Defendants provide virtually no legal argument in support of their summary judgment assertions, and they fail to delineate which claims apply to which entity. In fact, they treat both entities the same and interchangeably.[9] Presumably, the Defendants simply rely upon their previous arguments against Gillaspy's affirmative claims for relief.

Gillaspy too does little in responding to the Defendants' summary judgment motion on their counterclaims. He relies upon his previous arguments about the payment issues on the loan, the notice of default, and lack of standing/authority to foreclose, and he focuses his response on the Defendants' judicial foreclosure claim.

---

[9] Whereas SPS trumpets its lack of privity argument as a basis for summary judgement as to Gillaspy's breach of contract claim, SPS apparently claims contractual privity for purposes of bringing a breach of contract claim against Gillaspy.

18

Since the parties rely on their arguments concerning Gillaspy's claims, the Court will look to those arguments to resolve the Defendants' motion on the counterclaims. And since all four counterclaims tend to turn on the exact same issues raised in Gillaspy's breach of contract claims, they will be treated similarly. Because WFB did not show its entitlement to summary judgment on Gillaspy's breach of contract claim on his unapplied/misapplied payment allegations, the Defendants are not entitled to summary judgment on their counterclaims for the same reasons.

Further, the Court will deny the Defendants' summary judgment motion to the extent they are asserting their legal right to foreclose because of WFB's status as an assignee of the Mortgage. Although the Court agrees that WFB has shown it is the holder of the Note, WFB and SPS have not shown, or even argued, their right, either collectively or individually, to foreclose on the property in the absence of an assignment of the Mortgage to WFB. Of note, WFB has not filed an assignment of mortgage, but it has filed an affidavit stating that the assignment was lost. Neither WFB nor SPS have benefited the Court with any research or argument explaining how they can proceed with a foreclosure, nonjudicial or judicial, merely by virtue of WFB's status as the Note holder when there is no evidence that the Mortgage was ever assigned to WFB or that an assignment of mortgage actually existed.

In short, the Defendants have not shown their entitlement to summary judgment on any of their counterclaims.

## VI. CONCLUSION

For these reasons, it is **ORDERED** as follows:

1. Defendants' *Motion for Final Summary Judgment* (doc. 40) is **GRANTED in part and DENIED in part**. Counts Five (false light against WFB), Six (false light against SPS), Seven (defamation, libel, and slander against WFB), Eight (defamation, libel, and slander against SPS), and Eleven (FCRA violations against SPS) of the Amended Complaint (doc. 22) are **DISMISSED with prejudice**

19

upon consent of the Plaintiff. Summary judgment is granted in favor of Defendants and against Plaintiff on Counts One (unjust enrichment against WFB), Two (unjust enrichment against SPS), Four (breach of contract against SPS), Nine (TILA violations against SPS), Ten (RESPA violations against SPS), and Twelve (FDCPA violations against SPS) of the Amended Complaint (doc. 22), as well as Counts Three (breach of contract against WFB) and Thirteen (declaratory judgment) only as to Plaintiff's theory that Defendants failed to follow the proper notice requirements concerning a default. Those claims are thus **DISMISSED with prejudice**.

2. Summary judgment is **DENIED** on Counts Three (breach of contract against WFB) and Thirteen (declaratory judgment) of the Amended Complaint (doc. 22) only as they relate to Plaintiff's loan payments to Defendants and is **DENIED** as to Counts One (declaratory judgment), Two (breach of contract), Three (judicial foreclosure), and Four (money had and received) of the Countercomplaint (doc. 27). Those claims therefore remain.

3. Defendants' Motion in Limine (doc. 48) is **DENIED** as moot but with leave to refile as it concerns trial-related issues as narrowed by the Court's summary judgment rulings.

4. The Defendants' *Motion to Strike* (doc. 76) is **DENIED as moot**.

**DONE** this the 1st day of March 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE